IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

INTERNATIONAL PAINTERS AND           *
ALLIED TRADES INDUSTRY PENSION
FUND, *et al.*,
                                     *
     *Plaintiffs,*

v.                                   *          Civil Case No: 1:24-cv-02652-JMC

SOUTHEAST TRADESHOW
SERVIES, LLC, *et al.*,               *

     *Defendants.*
*       *       *       *       *       *       *       *       *       *       *       *       *       *

<u>**MEMORANDUM OPINION AND ORDER**</u>

The International Painters and Allied Trades Industry Pension Fund, Daniel R. Williams, the Finishing Trades Institute (together, the "IUPAT Plaintiffs") brought the instant Employee Retirement Income Security Act of 1974 ("ERISA") action against Defendant Southeast Tradeshow Services and its president, Defendant Sung Min Han on September 13, 2024. (ECF No. 1). Under the Amended Complaint, the IUPAT Plaintiffs added the Southern Painters Welfare Fund, Paul Canning, and Bruce Wohl as the "SP Plaintiffs" (together, the IUPAT and SP Platiniffs shall be referred to as the "Plaintiffs"). (ECF No. 23). Presently before the Court are three unopposed motions. (ECF Nos. 48, 49, 50). Those include the IUPAT Plaintiffs' Motion for Default Judgment against Defendant Southeast Tradeshow Services (ECF No. 48); the IUPAT Plaintiffs' Motion for Summary Judgment against Defendant Han (ECF No. 49); and the SP Plaintiffs' Motion for Default Judgment against Defendant Southeast Tradeshow Services (ECF No. 50). The motions are fully briefed, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth immediately below, the motions are GRANTED.

I.       **BACKGROUND**

1

Plaintiffs seek to collect fringe benefit contributions and related amounts found as a result of a payroll audit of Defendants' records. (ECF No. 23). Defendant Han is the President and sole owner of Defendant Southeast Tradeshow Services, and the IUPAT Plaintiffs therefore allege he is liable for all amounts owed. *Id.* at 7.[1] The IUPAT Plaintiffs further allege they are entitled to collect attorney's fees and costs. (ECF No. 48-2 at 1). As such, the IUPAT Plaintiffs rely on the arguments set forth to show Southeast Tradeshow Services is liable as the basis to impose joint liability upon Defendant Han. (ECF No. 49). In total, the IUPAT Plaintiffs seek the following award for unpaid contributions from Defendant Tradeshow Services and Defendant Han:

| IUPAT FUNDS' AUDIT (January 1, 2018–February 28, 2022) | | |
|---|---|---|
| Contribution Underpayments | $25,982.51 | |
| 20% Liquidated Damages | $5,196.51 | |
| Interest through February 18, 2026 | $11,408.99 | |
| Testing Fees | $2,348.87 | |
| Subtotal | | $44,936.88 |
| ATTORNEYS' FEES AND COSTS (through February 28, 2026) | | |
| Attorneys' Fees | $11,786.75 | |
| Costs | $549.09 | |
| Subtotal | | $12,335.84 |
| GRAND TOTAL | | $57,272.72 |

(ECF No. 48-1 at 2).

On October 21, 2024, Defendants retained counsel and entered their appearance in the case. (ECF No. 7). On December 18, 2024, the IUPAT Plaintiffs filed the First Amended Complaint, which added the SP Plaintiffs to the action. (ECF No. 23). In the SP Plaintiffs' Motion for Default, they seek the following award:

| SP FUNDS' AUDIT (January 1, 2018–February 28, 2022) | | |
|---|---|---|
| Contribution Underpayments | $55,202.62 | |
| 20% Liquidated Damages | $10,567.49 | |
| Interest through February 18, 2026 | $19,844.17 | |
| Subtotal | | $85,614.28 |

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. If there are none, the Court is referring to the page number of the PDF.

| ATTORNEYS' FEES AND COSTS (through February 28, 2026) | | |
|---|---|---|
| Attorneys' Fees | | **$18,987.55** |
| **GRAND TOTAL** | | **$104,601.83** |

(ECF No. 50 at 3). Defendants filed an Answer to the First Amended Complaint on March 3, 2025. (ECF No. 28). Defense Counsel withdrew from the instant litigation on June 5, 2025. (ECF No. 34). Accordingly, the Court ordered Defendant Southeast Tradeshow Services to obtain new counsel no later than July 7, 2925. *Id.* Defendant failed to obtain new counsel. The Court directed Defendant Southeast Tradeshow Services to show cause as to why default judgment should not be entered against it for failure to obtain new counsel on August 13, 2025. (ECF No. 39). Defendant failed to respond. Subsequently, the Court entered a Default against Defendant Southeast Tradeshow Services on September 17, 2025. (ECF No. 40). The Court directed the parties to file a Joint Status Report following the entry of Default and the expiration of the discovery deadline. (ECF No. 41). Plaintiffs represent that Defendant Han failed to "confirm his agreement with the draft report and/or provide any additional comments prior to its filing." (ECF No. 50-2 at 3). To date, neither Defendant has retained counsel, nor has Defendant Southeast Tradeshow moved to vacate the Default.

## II.    LEGAL STANDARD

### A.    Default Judgment

Federal Rule of Civil Procedure 55 governs entries of default and default judgments. Rule 55(a) requires that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Where a plaintiff's claim is not "sum certain" or a "sum that can be made certain by computation," the plaintiff "must apply to the court for default judgment" under Rule 55(b)(2). Fed. R. Civ. P. 55(b)(1)–(2).

3

In determining whether to award a default judgment, the Court accepts as true the well pleaded factual allegations in the Complaint as to liability. *Entrepreneur Media, Inc. v. JMD Ent. Grp., LLC*, 958 F. Supp. 2d 588, 593 (D. Md. 2013) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). However, "[a] complaint that avers bare legal conclusions or naked assertion[s] devoid of further factual enhancement, is insufficient to award default judgment." *Select Specialty Hosp. - Quad Cities, Inc. v. WH Administrators, Inc.*, No. CV PX-18-03586, 2020 WL 4569521, at *3 (D. Md. Aug. 7, 2020) (internal quotation marks omitted). The Court must also consider whether the unchallenged facts constitute a legitimate cause of action under Rule 55 because a party in default does not admit mere conclusions of law. *United States v. Redden*, No. 09-cv-2688-WDQ, 2010 WL 2651607, at *2 (D. Md. June 30, 2012) (citing *Ryan*, 253 F.3d at 790). Although the Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

Typically, if the Court determines that liability is established, the Court must then determine the appropriate amount of damages or other relief. *CGI Fin., Inc., v. Johnson*, No. 12-cv-1985-ELH, 2013 WL 1192353, at *1 (D. Md. Mar. 21, 2013). In this regard, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Where, as here, a plaintiff seeks declaratory relief, default judgment is proper when the complaint establishes a plaintiff's right to such relief. *Nautilus Ins. Co. v. REMAC Am., Inc.*, 956 F. Supp. 2d 674, 679 (D. Md. 2013).

**B.   Summary Judgment**

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

4

to judgment as a matter of law."  A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party.  *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)).  However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).  Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998). "[I]n the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility." *Angelini v. Balt. Police Dep't*, 464 F. Supp. 3d 756, 776 (D. Md. 2020).

"Where, as here, the nonmoving party fails to respond, the [C]ourt may not automatically grant the requested relief."  *LACO Elec. Inc.*, 2015 WL 1460131 at *2 (citing Fed. R. Civ. P. 56(e)(2)).  Rather, the Court must "review the motion, even if unopposed, and determine from

5

what it has before it whether the moving party is entitled to summary judgment as a matter of law."

*Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993).

### III.    ANALYSIS

   **A.    The IUPAT Plaintiffs' Motion for Default against Defendant Tradeshow Services is Granted Because they have Demonstrated Entitlement to the Relief Sought**

Because Defendant Tradeshow Services has failed to obtain counsel or otherwise defend in this action, the Clerk has entered a default, and the requirements for an order of default judgment are satisfied. Fed. R. Civ. P. 55(a). Indeed, a default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005). As such, the Court accepts as true all well-pleaded factual allegations set forth in the Complaint. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780–81 (4th Cir. 2001). The Court must nevertheless determine "whether the well-pleaded allegations ... support the relief sought in this action." *Id.* at 780.

The First Amended Complaint sets out the basis for the IUPAT Plaintiffs' relief in great detail. *See generally* (ECF No. 23). In support of their motion, the IUPAT Plaintiffs offer proof of the Bargaining Agreement and related Trust Agreement(s), as well as audit records. (ECF No. 48-5). The Bargaining and Trust Agreements show that Defendant Tradeshow Services is required to regularly pay the IUPAT Plaintiffs certain sums of money determined by the hours Defendant's employees worked. *Id.* at 4-29. Defendant was required to make timely contributions during the month following the month during which the hours were worked. *See id.* Payments would be considered if not received in a timely fashion. *Id.* Delinquent contributions resulted in an obligation to pay liquidated damages under those same agreements. *Id.* Finally, review of the Agreements show that Defendants were required to maintain time records and submit all relevant

records for examination so Plaintiffs may evaluate whether Defendants were making prompt and complete contributions. *Id.* Plaintiffs are entitled to conduct audits to determine the same. *Id.* at 29. In the event that an audit shows Defendants failed to provide complete and timely contributions, Defendants are required to reimburse the Plaintiffs for the amounts due, including attorneys' fees. *Id.*

In further support of their Motion, the IUPAT Plaintiffs included the Declaration of Michael O'Malley, the Audit and Collections Director for the IUPAT Plaintiffs. (ECF No. 48-3). Mr. O'Malley attests that he has personal knowledge of the Bargaining and Trust Agreements in this case, that Defendants are signatories to them, and that an audit entitles the IUPAT Plaintiffs to a sum of $44,936.88 as set forth below:

| IUPAT FUNDS' AUDIT (January 1, 2018–February 28, 2022) | | |
|---|---|---|
| Contribution Underpayments | $25,982.51 | |
| 20% Liquidated Damages | $5,196.51 | |
| Interest through February 18, 2026 | $11,408.99 | |
| Testing Fees | $2,348.87 | |
| **Subtotal** | | **$44,936.88** |

(ECF No. 43-3 at 3). The Court also reviewed the corresponding audit records. (ECF No. 48-5 at 35-50). The IUPAT Plaintiffs also offer the Declaration of Michele Stafford, their attorney, who attests that she billed the Plaintiffs a total of $18,987.55 in attorneys' fees. (ECF No. 48-6 at 5). She further attests that the IUPAT Plaintiffs incurred costs in the amount of $549.09. *Id.* at 6. As such, the Court is satisfied that the IUPAT Plaintiffs have demonstrated a contractual basis for their lawsuit, and the well-pleaded allegations demonstrate they are entitled to the relief sought.

Plaintiffs have also demonstrated entitlement under 29 U.S.C. § 1132(g)(2). Section 502(g)(2) permits the collection of fringe benefits, wage deductions, interest, liquidated damages, and attorneys' fees as follows:

> In any action under this title by a fiduciary for or on behalf of a plan to enforce Section 515 [29 U.S.C. §1145, relating to collection of delinquent benefit contributions] in which a judgment in favor of the plan is awarded, the Court shall award the plan –
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of –
> > (i) interest on the unpaid contributions, or
> > (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the Court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the Defendant, and,
> (E) such other legal or equitable relief as the court deems appropriate
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of the Internal Revenue Code of 1986 [26 USCS § 6621].[2]

§ 1132(g)(2). Therefore, Plaintiffs have also demonstrated their entitlement to the relief sought under § 1132(g)(2).

### 1.    Unpaid Contributions

As stated above, Mr. O'Malley attests to having personal knowledge of the Bargaining and Trust Agreements in this case and that Defendants owe $25,982.51 in unpaid contributions. (ECF No. 48-3). After reviewing the evidence in support of these numbers, the Court awards the IUPAT Plaintiffs $25,982.51 in unpaid contributions.

### 2.    Interest

Because Defendants failed to make prompt contributions to the IUPAT Plaintiffs in accordance with their Agreements, they also owe interest on those unpaid contributions. ERISA provides for interest awards on unpaid contributions "determined by using the rate provided under

---

[2] The IUPAT Funds had been charging the rate under section 6621. Beginning February 1, 2023, the rate increased to 10%. (ECF No. 48-3 at 3).

the plan, or, if none, the rate prescribed under § 6621 of Title 26." *See* 29 U.S.C. § 1132(g)(2). Under the Trust Agreement, interest accrues on the unpaid contributions at the rates reasonably set by the Board of Trustees, who initially set the interest at the fluctuating rate set forth under § 6621. (ECF No. 48-5). On February 1, 2023, the Board of Trustees adjusted the IUPAT Plaintiffs' interest rate on delinquent contributions at 10% per annum. (ECF No. 48-3 at 3). Taken together, review of the documents offered in support of the present motion calculate interest owed through February 19, 2026, in an amount of  $11,408.99. After reviewing the evidence in support of these numbers, the Court awards the IUPAT Plaintiffs $11,408.99 in interest.

### 3.       Liquidated Damages

Under the same operative agreements, the IUPAT Plaintiffs are entitled to liquidated damages at a rate set by the Board of Trustees, or under § 502 (g)(2), the greater of (1) a second award of interest, or (2) liquidated damages provided for under the plan.  *See* 29 U.S.C. § 1132(g)(2).  Here, the liquidated damages provided for under the plan is 20% of the unpaid contributions.  As such, a 20% calculation of delinquent contributions equals $5,196.51.  Here, the IUPAT Plaintiffs seek a liquidated damages award based on the terms of their Plan even though the interest amounts calculated above exceed the amount of liquidated damages.  The Court accordingly awards Plaintiffs $5,196.51 in liquidated damages.

### 4.       Costs and Attorneys' Fees

"In an ERISA action, a district court may, in its discretion, award costs and reasonable attorneys' fees to either party under 29 U.S.C. § 1132(g)(1), so long as that party has achieved some relative degree of success on the merits." *Williams v. Metropolitan Life Ins. Co.,* 609 F.3d 622, 634 (4th Cir.2010) (citations omitted).  The Fourth Circuit follows the "lodestar" approach to

determine the amount of attorney fees to which a prevailing party is entitled. *Int'l Painters and Allied Trades Indus. Pension Fund v. Capital Restoration & Painting Co.*, 919 F. Supp. 2d 680, 688 (D. Md. 2013) (citing *Robinson v. Equifax Info. Servs.*, 560 F.3d 235, 243–44 (4th Cir. 2009)). Under this approach, twelve factors assist the court in determining the appropriate attorneys' fees. Those include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* (other citation omitted). Under this approach, the Court finds the requested award of $18,987.55 in attorneys' fees and $549.09 in costs reasonable. Primary attorney Michele Stafford has been a licensed, practicing attorney since 1994 and has extensive experience in ERISA litigation. (ECF No. 48-6 at 3). She is a partner at Tucker Arensberg and responsible for over 100 pending matters. *Id.* She billed at a rate of $350.00 per hour through December 2024, $360 per hour from January through December 2025, and $370 per hour from January 2026 through the present day. *Id.* Two other Tucker Arensberg attorneys and three paralegals assisted in the case, each billing amounts consistent with the range of reasonable hourly rates provided in the "Rules and Guidelines Determining Lodestar Attorneys' Fees" ("Local Guidelines"), which are a component of the Local Rules for the District Court of Maryland. *See* D. Md. Loc. R. App'x B. Counsel also provided an itemized breakdown of the billing calculations, which supports the arguments made in support of their request for fees. Similarly, the requests costs are of the type normally incurred in preparation for a litigation of this nature. As such, the Court awards the IUPAT Plaintiffs $18,987.55 in attorneys' fees and $549.09 in costs.

Thus, the IUPAT Plaintiffs' Motion for Default Judgment (ECF No. 48) is GRANTED.

**B.      The IUPAT Plaintiffs' Motion for Summary Judgment against Defendant Han is Granted Because There is No Genuine Issue of Material Fact Concerning the Amounts Owed**

The IUPAT Plaintiffs next move for summary judgment against Defendant Han. (ECF No. 49). The IUPAT Plaintiffs' Motion for Summary Judgment is based on a theory of derivative liability; that is because Defendant Han is liable for Defendant Southeast Tradeshow as a fiduciary, Defendant Han should be liable as a matter of law. *Id.* In support of their argument the IUPAT Plaintiffs rely upon a South Carolina case in which the court denied a motion to dismiss on the basis that a complaint adequately pled some level of control concerning the management of the plan such that the plaintiffs could maintain an ERISA claim against the owner of a company absent specific allegations that the president owed a fiduciary duty. *Hornady Transp. v. McLeod Health*, 773 F. Supp. 2d 622, 632 n.13 (D.S.C. 2011). As the IUPAT Plaintiffs recognize, the procedural posture here is minimally comparable, as discovery has concluded, and the IUPAT Plaintiffs now seek summary judgment against Defendant Han, who is now *pro se* and has not filed a responsive brief. While the Court recognizes the support the IUPAT Plaintiffs have offered for the strength of their Amended Complaint against Defendant Han, the Court finds it pertinent to point out that they have not moved for a clerk's entry of default against Defendant Han, nor has one been entered. As such, the operative standard here is of summary judgment, not of the standards applicable upon review of a default judgment. As such, the undisputed evidence must show there is no genuine issue of material fact concerning Defendant Han's liability.

To that end, the Court has reviewed the case law the IUPAT Plaintiffs have offered in support of their arguments, but the Court is unpersuaded that the allegations set forth in Amended Complaint alone are sufficient to entitle them to judgment as a matter of law at the present

11

procedural posture.  As compelling as the Amended Complaint may be, the undisputed evidence must show they are entitled to relief, not the allegations set forth in a well-pleaded complaint. *See supra* Section II.B.

That notwithstanding, review of the record as a whole demonstrates sufficient evidence showing Defendant Han exercised the requisite control such that no reasonable juror could find he is not a fiduciary.  *W. Va. Laborers' Pension Tr. Fund v. Owens Pipeline Serv., LLC*, Case No. 2:10-cv-00131, 2011 U.S. Dist. LEXIS 133407, at *14 (S.D. W. Va. Nov. 2011) (granting summary judgment when a defendant president admitted that he was aware of how the company was supposed to withhold money and pay it to a trust fund and that he was the person who decided what obligations to pay); *Phelps v. C.T. Enterprises, Inc.*, 394 F.3d 213, 219 (4th Cir. 2005) (providing that where an employer "is entrusted with employee funds for remittance to a claims administrator, along with any employer contributions, the employer is acting in a fiduciary capacity under ERISA"); *Connors v. Paybra Mining Co.*, 807 F. Supp. 1242, 1246 (S.D. W. Va. 1992) (granting summary judgment when the "individual [d]efendants' respective admissions illustrate that contributions due and owing the Funds were withheld and directed elsewhere and such spending decisions were the personal, conscious choices of these [d]efendants," they exercised the requisite control to support a finding that they were ERISA fiduciaries as a matter of law).

Here, the undisputed evidence shows Defendant Han was the only officer working at Defendant Southeast Tradeshow during the audit period. (ECF No. 48-7 at 21). Notwithstanding objections, Defendant Southeast Tradeshow represented that Defendant Han and an entity named Employco USA constitute "employees or independent contractors that performed payroll and payment processing work or services" for Southeast Tradeshow.  *Id.* Similarly, they represented

that Defendant Han was "responsible for or otherwise handled relations with local and national labor unions" and "exercised authority to determine payroll deductions and contributions for the Company's Employees." *Id.* at 22. Critically, under *Owens Pipeline Services*, *Phelps*, and *Connors*, Defendant Southeast Tradeshow indicated only Defendant Han in response to a question asking them to identify "all individuals that had decision-making authority during the Time Period regarding whether or how the Company paid its debts or other financial obligations." *Id.* at 23. Further, review of the Bargaining and Trust Agreements shows that Defendant Han is also a signatory on the contracts on Southeast Tradeshow's behalf. (ECF No. 48-5 at 6).

Based on a totality review of the evidence, the record including Defendant Southeast Tradeshow's own discovery responses shows Defendant Han exercised decision-making authority and control over Southeast Tradeshow Services with respect to its relationship with unions, payments, and the corresponding managerial decisions. As a result, *Owens Pipeline Services*, *Phelps*, and *Connors* compel this Court to find that Defendant Han is an ERISA fiduciary as a matter of law and breached that fiduciary duty by failing to make timely contributions and by diverting payments away from the Fund. Therefore, the Court IUPAT Plaintiff's Motion for Summary Judgment (ECF No. 49) is GRANTED.

### C.    The SP Plaintiffs' Motion for Default against Defendant Tradeshow Services is Granted Because they have Demonstrated Entitlement to the Relief Sought

Consistent with the analysis above, the Court also finds the SP Plaintiffs are entitled to the amounts they request, based on much of the same evidence contemplated under the IUPAT Plaintiffs' Motion for Default. Because Defendant Tradeshow Services has failed to obtain counsel or otherwise defend in this action, the Clerk has entered a default, and the requirements for an order of default judgment are satisfied. Fed. R. Civ. P. 55(a). Indeed, a default judgment

"is appropriate when the adversary process has been halted because of an essentially unresponsive party." *Lawbaugh*, 359 F. Supp. 2d at 421. As such, the Court accepts as true all well-pleaded factual allegations set forth in the Complaint. *See Ryan,* 253 F.3d at 780–81. The Court must nevertheless determine "whether the well-pleaded allegations ... support the relief sought in this action." *Id.* at 780.

The SP Plaintiffs rely on the same Agreements and ERISA provisions the Court previously found entitled them to relief. *Supra* Section III.A. Indeed, the Bargaining and Trust Agreements show that Defendant Tradeshow Services is required to regularly pay the SP Plaintiffs certain sums of money determined by the hours Defendant's employees worked. (ECF No. 50-5 at 4-21). As with the IUPAT Plaintiffs, Defendant was required to make timely contributions during the month following the month during which the hours were worked. *See id.* Payments would be considered if not received in a timely fashion. *Id.* Delinquent contributions resulted in an obligation to pay liquidated damages under those same agreements. *Id.* Finally, review of the Agreements show that Defendants were required to maintain time records and submit all relevant records for examination so Plaintiffs may evaluate whether Defendants were making prompt and complete contributions. *Id.* Plaintiffs are entitled to conduct audits to determine the same. *Id.* at 29. In the event that an audit shows Defendants failed to provide complete and timely contributions, Defendants are required to reimburse the Plaintiffs for the amounts due, including attorneys' fees. *Id.*

In further support of their Motion, the SP Plaintiffs included the Declaration of Michael O'Malley, the Audit and Collections Director for the SP Plaintiffs. (ECF No. 50-3). Mr. O'Malley attests that he has personal knowledge of the Bargaining and Trust Agreements in this case, that

14

Defendants are signatories to them, and that an audit entitles the IUPAT Plaintiffs to a sum of $85,614.28as set forth below:

| SP FUNDS' AUDIT (January 1, 2018–February 28, 2022) | | |
|---|---|---|
| Contribution Underpayments | $55,202.62 | |
| 20% Liquidated Damages | $10,567.49 | |
| Interest through February 18, 2026 | $19,844.17 | |
| **Subtotal** | | **$85,614.28** |

(ECF No. 50-3 at 3).  The Court also reviewed the corresponding audit records.  (ECF No. 50-5 at 28-44).  The SP Plaintiffs also offer the Declaration of Michele Stafford, their attorney, who attests that she billed the Plaintiffs a total of $18,987.55 in attorneys' fees. (ECF No. 50-6 at 6). As such, the Court is satisfied that the SP Plaintiffs have demonstrated a contractual basis for their lawsuit, and the well-pleaded allegations demonstrate they are entitled to the relief sought.

Plaintiffs have also demonstrated entitlement under 29 U.S.C. § 1132(g)(2).  Section 502(g)(2) permits the collection of fringe benefits, wage deductions, interest, liquidated damages, and attorneys' fees as follows:

> In any action under this title by a fiduciary for or on behalf of a plan to enforce Section 515 [29 U.S.C. §1145, relating to collection of delinquent benefit contributions] in which a judgment in favor of the plan is awarded, the Court shall award the plan –
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of –
>> (i) interest on the unpaid contributions, or
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the Court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the Defendant, and,
> (E) such other legal or equitable relief as the court deems appropriate
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of the Internal Revenue Code of 1986 [26 USCS § 6621].

15

§ 1132(g)(2). Therefore, Plaintiffs have also demonstrated their entitlement to the relief sought under § 1132(g)(2).

1.  Unpaid Contributions

As stated above, Mr. O'Malley attests to having personal knowledge of the Bargaining and Trust Agreements in this case and that Defendants owe $55,202.62 in unpaid contributions.  (ECF No. 50-3).  After reviewing the evidence in support of these numbers, the Court awards the SP Plaintiffs $55,202.62 in unpaid contributions.

2.      Interest

Because Defendants failed to make prompt contributions to the SP Plaintiffs in accordance with their Agreements, they also owe interest on those unpaid contributions.  ERISA provides for interest awards on unpaid contributions "determined by using the rate provided under the plan, or, if none, the rate prescribed under § 6621 of Title 26." *See* 29 U.S.C. § 1132(g)(2). Under the Trust Agreement, interest accrues on the unpaid contributions at the rates reasonably set by the Board of Trustees, who initially set the interest at the fluctuating rate set forth under § 6621.[3]  (ECF No. 50-5).  Review of the operative calculation rates show interest accrued through February 18, 2026, in an amount of $19,844.17.  After reviewing the evidence in support of these numbers, the Court awards the SP Plaintiffs $19,844.17 in interest.

3.      Liquidated Damages

Under the same operative agreements, the SP Plaintiffs are entitled to liquidated damages at a rate set by the Board of Trustees, or under § 502 (g)(2), the greater of (1) a second award of

---

[3] The Department of Labor's website includes the IRC 6621 Table of Underpayment Rates. https://www.dol.gov/agencies/ebsa/employers-and-advisers/plan-administration-andcompliance/correction-programs/vfcp/table-of-underpayment-rates.

interest, or (2) liquidated damages provided for under the plan. *See* 29 U.S.C. § 1132(g)(2). Here, the liquidated damages provided for under the plan is 20% of the unpaid contributions. As such, a 20% calculation of delinquent contributions equals $10,567.49. Here, the SP Plaintiffs seek a liquidated damages award based on the terms of their Plan even though the interest amounts calculated above exceed the amount of liquidated damages. The Court accordingly awards the SP Plaintiffs $10,567.49 in liquidated damages.

### 4.    Costs and Attorneys' Fees

Applying the same Lodestar test as set forth above, the Court finds $18,987.55 in attorneys' fees reasonable. Attorney Michele Stafford provided the same documents that in support of the SP Plaintiffs' motion as she did with the IUPAT Plaintiffs' motion, which demonstrated that multiple of the Lodestar factors are met based on time spend, rates charged, complexity of the case, and experience. As such, the Court awards the SP Plaintiffs $18,987.55 in attorneys' fees and $549.09 in costs.

Thus, the SP Plaintiffs' Motion for Default Judgment (ECF No. 50) is GRANTED.

## IV.    CONCLUSION

Accordingly, it is hereby ORDERED

(1) The IUPAT Plaintiffs' Motions for Default Judgment and for Summary Judgment (ECF Nos. 48, 49) are GRANTED;

(2) Defendant Southeast Tradeshow Services and Defendant Han are liable to the IUPAT Plaintiffs in the following amounts:

| IUPAT FUNDS' AUDIT (January 1, 2018–February 28, 2022) | | |
|---|---|---|
| Contribution Underpayments | $25,982.51 | |

17

| | | |
|---|---|---|
| 20% Liquidated Damages | $5,196.51 | |
| Interest through February 18, 2026 | $11,408.99 | |
| Testing Fees | $2,348.87 | |
| Subtotal | | $44,936.88 |
| ATTORNEYS' FEES AND COSTS (through February 28, 2026) | | |
| Attorneys' Fees | $11,786.75 | |
| Costs | $549.09 | |
| Subtotal | | $12,335.84 |
| GRAND TOTAL | | $57,272.72 |

(3) Interest shall continue to accrue at the rate of 10% per annum on the principal unpaid contributions ($25,982.51) from February 19, 2026, through entry of Judgment;

(4) Post-judgment interest shall continue to accrue at the rate of 10% per annum on the principal unpaid contributions ($25,982.51) and at the current legal rate on the balance of the judgment, until satisfied;

(5) Defendant Southeast Tradeshow Services is liable to the SP Plaintiffs in the following amounts:

| | | |
|---|---|---|
| SP FUNDS' AUDIT (January 1, 2018–February 28, 2022) | | |
| Contribution Underpayments | $55,202.62 | |
| 20% Liquidated Damages | $10,567.49 | |
| Interest through February 18, 2026 | $19,844.17 | |
| Subtotal | | $85,614.28 |
| ATTORNEYS' FEES AND COSTS (through February 28, 2026) | | |
| Attorneys' Fees | | $18,987.55 |
| GRAND TOTAL | | $104,601.83 |

(6) interest shall continue to accrue at the variable IRS rate on the principal unpaid contributions ($55,202.62) from February 19, 2026, through entry of this Judgment; and

(7) Post-judgment interest shall continue to accrue at the variable IRS rate on the principal unpaid contributions ($55,202.62) and at the current legal rate on the balance of the judgment, until satisfied.

SO ORDERED.

Dated: <u>May 5, 2026</u>

_____/s/_____
J. Mark Coulson
United States Magistrate Judge